[No. G016606. Fourth Dist., Div. Three. Jan. 5, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN E. PHELPS, Defendant and Appellant.

COUNSEL

Diane Nichols, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Holly D. Wilkens and Anne Marie Urrutia, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WALLIN, J.—John E. Phelps appeals his conviction for hit and run causing injury,[1] contending the trial court erred by ordering restitution for future medical expenses. We affirm.

Phelps crashed the car he had stolen into a station wagon in which seven-year-old Trent McGee was riding, paralyzing Trent from the neck down. At sentencing on the hit-and-run conviction, the trial court ordered restitution pursuant to Government Code section 13967[2] in the amount of $150,000, $29,000 for past medical expenses and $121,000 for future medical expenses.

Phelps argues the plain language of section 13967 prohibits the court from ordering restitution for future medical expenses. The statute provides, in pertinent part: "In cases in which a victim has suffered economic loss as a result of the defendant's criminal conduct, . . . the court shall order restitution to be paid to the victim. . . . [R]estitution shall be imposed in the amount of the losses, as determined. The court shall order full restitution unless it finds clear and compelling reasons for not doing so, and states them on the record. . . . [¶] Restitution ordered pursuant to this subdivision shall, to the extent possible, be of a dollar amount that is sufficient to fully reimburse the victim, or victims, for all determined economic losses incurred as the result of the defendant's criminal conduct." (§ 13967, subd. (c).)

---

[1]He was convicted of other charges not pertinent to the appeal.
[2]All statutory references are to the Government Code unless otherwise noted.

██   Phelps claims the section's language compels the conclusion that restitution is limited to monies expended when the court orders restitution. He notes the statute requires direct restitution where a victim "has suffered" economic loss as the result of a defendant's criminal conduct, and directs the court to order restitution for all economic losses "incurred." Phelps reasons the use of past tense mandates his interpretation of the statute.

██   "A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] In construing a statute, our first task is to look to the language of the statute itself. [Citation.] When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms. [Citations.]" (*DuBois* v. *Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387-388 [20 Cal.Rptr.2d 523, 853 P.2d 978]; see also *Halbert's Lumber, Inc.* v. *Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238-1239 [8 Cal.Rptr.2d 298].)

██   Here, it is unclear whether the term "economic loss" is intended to encompass all expenses necessary to treat an injury (those that have arisen and those yet to arise), or only those that have arisen by the date of sentencing. The former interpretation is supported by the language of the statute requiring restitution "be of a dollar amount that is sufficient to fully reimburse the victim, or victims, for *all determined economic losses* incurred as the result of the defendant's criminal conduct." (§ 13967.) This language, requiring restitution for *all* economic losses, suggests the statute contemplates past and prospective economic losses.   ██   "[T]he various parts of a statutory enactment must be harmonized by considering [a] particular clause or section in the context of the statutory framework as a whole. [Citations.]" (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230-231 [110 Cal.Rptr. 144, 514 P.2d 1224].)

██   Furthermore, it is unclear whether, as Phelps contends, the word "incurred" is meant to limit recovery to expenses arising before sentencing, or to include all economic losses that will be "incurred."[3] Faced with this ambiguity, we must ascertain the lawmakers' intent to give the statute's language its intended effect. (*People* v. *Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163]; *Halbert's Lumber, Inc.* v. *Lucky Stores, Inc., supra,* 6 Cal.App.4th at p. 1239.)

The statute was enacted pursuant to a constitutional scheme adopted by the voters in 1982 as part of Proposition 8. "In the case of a constitutional

---

[3] An alternate construction would be that the "loss" is incurred at the time of the injury even though money would not be paid for treatment until later.

provision adopted by the voters, their intent governs. [Citations.]" (*People* v. *Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) Article I, section 28, of the California Constitution, which gave rise to the statute, provides in relevant part: "(a) The People of the State of California find and declare that the enactment of comprehensive provisions and laws ensuring a bill of rights for victims of crime, . . . is a matter of grave statewide concern. . . . [¶] . . . [¶] (b) Restitution. It is the unequivocal intention of the People of the State of California that *all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer.* [¶] Restitution shall be ordered from the convicted persons in every case, . . . in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary." (Italics added.)

The intent of the voters is plain: every victim who suffers a loss shall have the right to restitution from those convicted of the crime giving rise to that loss. Nothing in the language of the Constitution suggests an intent to limit the right to restitution for financial losses occurring within a particular time frame, or restitution to expenses incurred before sentencing. In fact, the language manifests a contrary intent. The Constitution speaks of "comprehensive provisions and laws," "restitution . . . for financial losses," and "[r]estitution . . . from the convicted persons in every case." (Cal. Const., art. I, § 28, subd. (b).) The only qualification is that the loss must be "the result of criminal activity." (*Ibid.*)

California Constitution, article I, section 28, subdivision (b) does not qualify "loss" with the word "economic," as does the statute. Although it can plausibly be argued that the victim's future medical expenses are not an "economic loss" (since they are not yet due), it cannot be said that Phelps's victim (who has lost all feeling and movement from the neck down) has not yet suffered a "loss." Since the word "loss" must be construed broadly and liberally to uphold the voters' intent (*People* v. *Nguyen* (1994) 23 Cal.App.4th 32, 43 [28 Cal.Rptr.2d 140]), we find that it refers to a victim's injuries, requiring restitution for all expenses necessary to treat those injuries, regardless of when they arise.

The use of the word *restitution* in the Constitution and section 13679 also supports this construction. ■ " ' "If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." [Citation.] . . . "When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear." [Citations.] . . .' " (*DuBois* v. *Workers' Comp. Appeals Bd, supra,* 5 Cal.4th 382, 388.) ■ Restitution is defined

as "the making good of or giving an equivalent for some injury." (Webster's New Internat. Dict. (3d ed. 1986) p. 1936.) Phelps stipulated that it will cost $150,000 to treat his victim's injuries, but claims the statute only allows restitution for the $29,000 already spent. To "make good" or "give the equivalent for [the] injury" Phelps must pay restitution for the entire amount. Restitution is also defined as "restoration of a person to a former position or status." (*Ibid.*) Although Phelps's paralyzed seven-year-old victim, Trent, may never be restored to his former physical condition, his family can be returned to its preaccident financial status by paying Trent's past and future medical expenses.[4]

Phelps's proposed interpretation of the statute stands in direct conflict with the constitutional language requiring restitution for an injury. ■ " ' "[I]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend. [Citation.]" ' " (*People* v. *King* (1993) 5 Cal.4th 59, 69 [19 Cal.Rptr.2d 233, 851 P.2d 27].) Reading the statute as Phelps contends we should leads to an absurd result: his victim would not be fully compensated.

Phelps argues that even if the statute is ambiguous and subject to two interpretations, the doctrine of lenity requires that we adopt the construction most favorable to him. ■ Lenity is "the policy of this state to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit; just as in the case of a question of fact, the defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute. [Citation.]" (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) The rule of lenity, however, "applies only when 'two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable. . . .' . . . The court may look to the legislative history to resolve a possible ambiguity." (*People* v. *Martinez* (1993) 13 Cal.App.4th 23, 29 [16 Cal.Rptr.2d 556], citations omitted.) Furthermore, "[the] rule will not be applied to change manifest, reasonable, legislative purpose . . . ." (*People* v. *Banks* (1959) 53 Cal.2d 370, 391 [1 Cal.Rptr. 669, 348 P.2d 102].)

■ Here, the intent of the voters has unequivocally resolved any possible ambiguity in favor of Phelps's victim. The two possible interpretations do not stand in equipoise and the rule of lenity is inapplicable.

---

[4] It is unlikely, of course, that full restitution will ever be made. But setting restitution cannot be premised on that factor.

Phelps claims allowing victim restitution for prospective medical expenses would cause massive problems within the criminal court system. That is not true. Layperson jurors are regularly asked to award damages for future medical expenses based on input from experts. (See *Schiernbeck* v. *Haight* (1992) 7 Cal.App.4th 869, 876 [9 Cal.Rptr.2d 716] [discussing jury instructions on the subject].) Judges can certainly do the same thing in the context of a sentencing hearing. The defendant would be entitled to challenge the evidence on that point as he or she is entitled to do concerning other aspects of restitution.[5]

The judgment is affirmed.

Crosby, Acting P. J., and Rylaarsdam, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 27, 1996.

---

[5]Phelps stipulated to the amount of future medical expenses, so we are not called upon to resolve any issues in that regard.