[No. C047014. Third Dist. May 26, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
CHAD WILSON KEICHLER, Defendant and Appellant.

COUNSEL

Lora Fox Martin, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, and Michael A. Canzoneri, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**ROBIE, J.**—The issue in this is case is whether restitution to victims of a fight may include the cost of traditional Hmong healing ceremonies and herbal medicines.

Defendant Chad Wilson Keichler pled no contest to one count of violation of civil rights for uttering racial slurs during a fight with three men. After a hearing, the trial court awarded the victims restitution including $3,119 for expenses they incurred for traditional Hmong healing ceremonies and herbal medicines.

Defendant argues that the restitution statute does not provide a basis for the recovery of these expenses. Defendant also argues even if the law authorizes them, the trial court's award is not supported by substantial evidence. Finding no error, we shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the probation report, defendant got into a fight with the three victims, Xiong Xeng Moua, Nhia Vue, and Kenneth Lee. The three victims are members of the Hmong community. Defendant hit Moua several times and ultimately knocked him unconscious. Moua suffered a brain contusion with a significant concussion. Moua's hospital bill totaled $3,254.75, of which Medi-Cal paid $1,920, leaving a balance due from Moua of $1,334.75.

During the altercation, defendant pushed both Vue and Lee to the ground, stepped on Vue's back, and hit Lee in the mouth. Vue suffered many abrasions and contusions and also sustained a laceration to his eye. His hospital bill was $998.50. He also received a bill for $732.10 for ambulance services.

Lee sustained a busted lip and pain in his back. He declined western medical treatment.

In response to the probation department's request, Moua submitted a signed statement requesting restitution in the amount of $1,824.30 to cover his out-of-pocket expenses for a traditional Hmong spirit calling ceremony. Moua explained, "In my culture, one way of helping a person who has been traumatized similar to what I've gone through is to hold [a] traditional spirit calling [ceremony] to call my spirit back to me." Moua went through three of these spirit calling ceremonies. These ceremonies require, among other things, the sacrifice of animals. As a result, Moua claimed his family had to kill a pig, two cows, and several chickens. Moua claimed the costs for the cows, pig, and supplies was $1,524.30 and attached receipts substantiating these amounts. Moua represented that the additional costs for the chickens and herbal medications was $300.

In Vue's signed statement, he asked the court to award $925.80 to pay for his out-of-pocket expenses for Hmong herbal remedies and the traditional spirit calling ceremony. Vue's written claim stated he spent $525.80 for herbal medications. Of those expenses, Vue attached only the receipts for the postage to obtain the medicines. He also estimated that his remaining expenses for the chickens used in his spirit calling ceremony were $400.

Lee submitted a written request to the court for restitution in the amount of $670 for the cost of Hmong herbal medication and the cost of a traditional Hmong spirit calling ceremony. Lee represented that his family had to kill a cow for his spirit calling ceremony. He estimated the cow cost $600 and his additional expenses were $70, but he did not have receipts to substantiate these claims. His estimate of $600 for the cow, however, was in line with the receipts submitted by Moua.

At the sentencing hearing, the court stated, "the victims are entitled to restitution. The Court is not going to grant restitution at this time because of the nature of the request, which are [sic] different culturally than what this Court is used to granting and the Court needs to hear from people who are experts in the Hmong culture to explain to the Court what these rituals were, how important they are to their culture."

At the restitution hearing, Ger Vang testified on behalf of the People. Ger Vang is from Laos and came to this country in 1988. He is Hmong and familiar with the traditions and cultures of that community. Vang testified the Hmong people believe a person has many souls within the body. If a person

is attacked or assaulted, one or more of these souls may leave the body. The Hmong people believe that the absence of one of their souls will make them ill. To remedy this condition, the Hmong call a shaman to perform a spirit calling ceremony called Hublee to call the lost soul back to the body. Vang testified this ceremony dates back several centuries. Vang described the ceremony as involving flowers, candles, string, and the sacrifice of animals.[1] Vang testified a typical spirit calling ceremony would generally cost $1,000, although he did not know how much Moua, Vue, or Lee paid for their own ceremonies. In addition to the ceremony, the Hmong people also use traditional herbal medications to treat themselves.

Nou Kue also testified. He is a native Laotian who has been living in the United States since 1976. Kue testified that he believes a body has a number of spirits, and that if a person encounters a significant event, the spirit may feel threatened and leave the body. Kue testified that he further believes that if his spirit did not return to his body, he would be continually ill. To rectify this situation, he would have a spirit calling ceremony. Kue also described some of the components of the ceremony to the court.

Defendant offered no evidence at the hearing, nor did he object to the contents of the probation report. Instead, defense counsel argued for the court to stay the restitution award pending the resolution of the civil suit between defendant and the victims. Further, counsel stated he had "some concerns about the requested reimbursement costs." For instance, he argued the timing of the ceremonies suggested that they were holiday ceremonies, not spirit calling ceremonies. Also, he commented that the victims had provided estimates for the herbal medications without providing receipts. He was also concerned that some of the medications might be available from a backyard garden. Counsel concluded by arguing, "If I could—you know, if it would be possible for us to be presented with some sort of documentation as to those costs, as to estimates—and those are their language. Estimated costs for cow is $600; estimated money spent on the ceremonies is approximately $70. Mr. Vue estimates that all of his expenses come to around $400. I'm looking for some more definite amounts."

At the conclusion of the hearing, the trial court issued a restitution order. It concluded that any amounts reflected in that order would be offset by any judgment in the civil rights lawsuit. The court awarded restitution in the amount of $6,183, which included Moua's $1,334 in medical expenses and $1,524 in Hublee expenses; Vue's $1,730 in medical expenses and $925 in Hublee and herbal medicine expenses; and Lee's $670 in Hublee and herbal medicine expenses. Defendant appeals.

---

[1] The Hmong believe that the souls of the animals replace their own lost soul. The animals are consumed by the attendees of the ceremony as part of the ceremony.

## DISCUSSION

Defendant argues that it was an abuse of discretion to award restitution for the Hublee ceremonies and that the amount of restitution ordered is not supported by substantial evidence. We disagree.

### A

### *Standard of Review*

██ Restitution is constitutionally and statutorily mandated in California. (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498 [118 Cal.Rptr.2d 511]; Cal. Const., art. I, § 28, subd. (b).) The constitutional mandate for restitution is carried out through Penal Code[2] section 1202.4, which provides, in part: "(f) In every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record."
██ Restitution under this provision "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to" a list of enumerated items, including medical care, losses to property, and even security measures. (§ 1202.4, subd. (f)(3).)

██ " 'The standard of review of a restitution order is abuse of discretion. "A victim's restitution right is to be broadly and liberally construed." [Citation.] " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " [Citations.]' [Citation.]" (*People v. Baker* (2005) 126 Cal.App.4th 463, 467 [23 Cal.Rptr.3d 871].) ██ "In reviewing the sufficiency of the evidence, ' "[t]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' [Citations.] Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.]" (*Id.* at pp. 468–469.) The trial court " 'must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' " (*People v. Mearns, supra,* 97 Cal.App.4th at p. 498.)

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

B

*Hublee Ceremony Expenses Are Properly Included in a
Restitution Award*

Defendant first argues that awarding Moua, Vue, and Lee "large sums of money for nontraditional healing ceremonies appears to be 'beyond the bounds of reason under all the circumstances [in this case.]' " We disagree.

■ The restitution statute allows for recovery of a broad variety of economic losses that are incurred as a result of the defendant's criminal conduct. (§ 1202.4, subd. (f)(3).) The illustrative list of items for which restitution may be ordered "includ[es], but [is] not limited to" payment for the value of stolen or damaged property, medical expenses, mental health counseling expenses, wages or profits lost by the victim, noneconomic losses including psychological harm, interest, attorney fees, moving expenses, extra security, and expenses to retrofit a house or car to make them accessible. (§ 1202.4, subd. (f)(3).)

■ " 'A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] In construing a statute, our first task is to look to the language of the statute itself. [Citation.] When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms. [Citations.]' [Citations.]" (*People v. Phelps* (1996) 41 Cal.App.4th 946, 949 [48 Cal.Rptr.2d 855].)

■ In examining the restitution statute, "[t]he intent of the voters is plain: every victim who suffers a loss shall have the right to restitution from those convicted of the crime giving rise to that loss." (*People v. Phelps, supra,* 41 Cal.App.4th at p. 950.) As a result, "the word 'loss' must be construed broadly and liberally to uphold the voters' intent." (*Ibid.*) Because the statute uses the language "including, but not limited to" these enumerated losses, a trial court may compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior, even if not specifically enumerated in the statute. (See *People v. Mearns, supra,* 97 Cal.App.4th at pp. 499–500.)

■ We conclude the trial court's award of the expenses arising out of this traditional Hmong healing ceremony was proper. The record establishes these

victims underwent these traditional Hmong healing ceremonies because defendant injured them. We agree with the People's contention below that this ceremony is the Hmong equivalent of western medical expenses.

In the trial court, the People's witness testified that the Hmong Hublee ceremony is a ceremony designed to heal the victim of a trauma or sickness. Its roots are deeply embedded in the Hmong culture and extend back over several hundred years of history. The record amply demonstrates the importance of a Hublee ceremony to the physical and psychological health of the Hmong people after having sustained an injury.[3]

On this record, this ceremony is no more ephemeral or intangible than the psychological treatment a western practitioner might provide to his or her patient. Indeed, even if the bare minimum result of this ceremony is that it calms the victims of this crime after their traumatic experience, this ceremony serves the same purposes for Hmong victims as counseling and other psychological treatment. Given this evidence, the award of expenses for this ceremony does not impermissibly "allow [the] victim to be opportunistic." (*People v. Mearns, supra,* 97 Cal.App.4th at p. 502.)

We find further support for our conclusion that these traditional healing ceremony expenses are the proper subject of restitution orders in the opinions of both the appellate courts and Supreme Court of Minnesota. There, the courts have concluded that expenses incurred in Hmong healing ceremonies are properly the subject of a restitution order. (*State v. Tenerelli* (Minn. 1999) 598 N.W.2d 668, 672–673 [the court found no abuse of discretion in the district court's determination that restitution could be properly awarded for expenses for the nonreligious Hmong healing ceremony Hu Plig], affirming *State v. Tenerelli* (Minn.Ct.App. 1998) 583 N.W.2d 1, 2 [same].)

Given the broad mandate of the Constitution and the statute, and the nature of this ceremony as medical or psychological treatment, the trial court here did not abuse its discretion in awarding restitution for expenses incurred in conjunction with the Hublee ceremony.[4]

---

[3] The interplay between western medical treatment and traditional Hmong healing ceremonies is explored at length in a book by Fadiman, The Spirit Catches You and You Fall Down (1997).

[4] Defendant raised no challenge to this award based upon the establishment clauses of the United States or California Constitutions in the trial court or in his briefing here. (U.S. Const., 1st Amend.; Cal. Const., art. I, § 4.) Thus, we express no opinion on the question of whether an award of restitution for a traditional ceremony that has religious components might run afoul of those constitutional proscriptions.

## C

### *Substantial Evidence Supports the Amount Awarded*

██ "[T]he trial court is entitled to consider the probation report when determining the amount of restitution." (*People v. Foster* (1993) 14 Cal.App.4th 939, 946 [18 Cal.Rptr.2d 1].) For example, statements by the victims of the crimes about the value of the property stolen constitute "prima facie evidence of value for purposes of restitution." (*Ibid*; but see *People v. Harvest* (2000) 84 Cal.App.4th 641, 653 [101 Cal.Rptr.2d 135] [probation officer's report "may satisfy notice requirements for due process [citation], but it cannot take the place of evidence. [Citation]"].) "This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution. [Citation.] When the probation report includes information on the amount of the victim's loss and a recommendation as to the amount of restitution, the defendant must come forward with contrary information to challenge that amount." (*People v. Foster, supra,* 14 Cal.App.4th at p. 947.) Absent a challenge by the defendant, an award of the amount specified in the probation report is not an abuse of discretion. (*People v. Pinedo* (1998) 60 Cal.App.4th 1403, 1406–1407 [71 Cal.Rptr.2d 151].)

Here, the trial court's award of restitution was rational, based on factual evidence presented at the hearing and in the probation report, and within its broad discretion. The probation report provided statements from the victims to which no objection (hearsay or otherwise) was raised. The report also included an itemization of the amounts sought by the victims and included a recitation of their medical bills and the expenses incurred in conjunction with the Hublee ceremony. It also included receipts for the cows and pig used in Moua's ceremonies and receipts for the postage incurred by Vue. Furthermore, the expert witness who testified at the hearing claimed that a typical Hublee ceremony costs approximately $1,000. The testimony at the hearing, the victim's written statements, and attached receipts constituted substantial evidence of the amount of restitution ordered by the court. Given defendant's failure to offer any evidence to challenge any of the amounts presented, the trial court did not abuse its discretion in awarding those amounts.

## DISPOSITION

The judgment is affirmed.

Davis, Acting P. J., and Raye, J., concurred.