Filed 9/10/21  P. v. Moultry CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KEITH H. MOULTRY,<br><br>    Defendant and Appellant. | 2d Crim. No. B309293<br>(Super. Ct. No. 16F-02040)<br>(San Luis Obispo County) |

Keith H. Moultry appeals an order imposing restitution following his conviction for identity theft (Pen. Code, § 530.5, subd. (a))[1], identifying information theft (*id.*, subd. (c)(2)), and false personation (§ 529, subd. (a)(3)).  The trial court sentenced him to an aggregate prison term of two years.

After a restitution hearing, the court ordered Moultry to pay $2,230 to Galileo Surgery Center (Galileo) for the cost of a "human resource consultant background check."  A background check revealed that Moultry had applied for employment with

_____

[1] All statutory references are to the Penal Code.

Galileo using the name of another person.  We conclude, among other things, that the court did not err by issuing the restitution order.  We affirm.

FACTS

Moultry applied for a job with Galileo, a surgery center, and he was hired.  About a week later, Judith Smith, "a consultant as a Human Resources agent for [Galileo]," told the police that her investigation of Moultry revealed that he used "a fraudulent name, fraudulent social security card, and a fraudulent Radiologic certificate to gain employment."  He had used the name and identity of another person, "K.M.," on his employment application.

Moultry told police, "I falsely represented myself to get a job."

The People filed an information alleging Moultry had committed the felony offenses of:  1) identity theft (§ 530.5, subd. (a)) in which he "unlawfully used that information for an unlawful purpose" (count 1); 2) identifying information theft (*id.*, subd. (c)(2)) (count 2); and 3) false personation (§ 529, subd. (a)(3)) (count 3).

Moultry pled no contest to these three counts.

K.M. did not submit a request for restitution.  But Galileo submitted a restitution request form "requesting restitution in the amount of $2,230.00 for the cost of a human resource consultant to perform the background check."

At Moultry's restitution hearing, the probation report requested restitution for Galileo.  Moultry's counsel objected.  He said, "I don't have any evidence."  Counsel said Galileo was an "indirect victim," not a "direct victim."  K.M. is the person "whose identity was stolen."  "My understanding is that [Galileo] hires a

2

[human resources] consultant to perform background checks on all of their employees."

The trial court granted the request for restitution to Galileo for $2,230. It said "the crime was discovered" as a result of the background check. The court found Galileo is "an appropriate victim."

## DISCUSSION

Moultry contends "[t]he one and only direct victim at the time of the theft offenses was the owner of the identification, K.M.," and "K.M. filed no request for restitution." Moultry claims the trial court consequently erred by issuing its restitution order.

We conclude Galileo was a direct victim and entitled to restitution.

"There is 'a broad constitutional mandate of California Constitution, article 1, section 28, subdivision (b), that restitution must be imposed "in every case . . . in which a crime victim suffers a loss . . . ." ' " (*People v. Kelly* (2020) 59 Cal.App.5th 1172, 1178.) "The restitution statute allows for recovery of a broad variety of economic losses that are incurred as a result of the defendant's criminal conduct. (§ 1202.4, subd. (f)(3).)" (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1046.)

" '[A] trial court may compensate a victim *for any economic loss which is proved to be the direct result of the defendant's criminal behavior . . . .*' " (*People v. Kelly*, *supra*, 59 Cal.App.5th at p. 1179.) "Under the restitution statute, '[a] victim's restitution right is to be broadly and liberally construed.' " (*Id.* at p. 1180.) " 'A restitution order is reviewed for abuse of discretion and will not be reversed unless it is arbitrary or capricious.' " (*Id.* at p. 1181.)

3

Moultry concedes that he "obtained a fraudulent certificate qualifying him for the job" with Galileo. He argues Galileo is not a victim because "[i]t would have been regular business conduct" for Galileo "to check [a] new [employee's] background."

We agree with the People that Galileo was a victim of Moultry's crime because it incurred a loss due to "the *use* of the stolen information to obtain employment." We agree.

Moultry committed his false identity crimes to target and deceive Galileo. He used K.M.'s identity to get a job there. He admitted, "I falsely represented myself to get a job." He thus "falsely represented [him]self" *to his victim – Galileo.* His conduct involved a serious threat to Galileo because he used K.M.'s "radiologic certificate" to obtain employment at the surgery center.

A medical center that hires an unqualified person as a result of that person's criminal conduct is a crime victim. Galileo had to verify Moultry's qualifications for his job. Galileo discovered Moultry's criminal conduct and his deception in gaining employment. "Restitution may include expenses incurred to protect the crime victim from the defendant." (*People v. Kelly*, *supra*, 59 Cal.App.5th at p. 1180.) Galileo incurred such an expense. It was a cost incurred for an investigation leading to Moultry's arrest and prosecution.

This case is analogous to *People v. Kelly*, *supra*, 59 Cal.App.5th 1172. The defendant used another person's identity to unlawfully penetrate a company. The company incurred costs to investigate and determine that the defendant had committed crimes against it and to assist in the prosecution of the defendant. These costs were properly included in the restitution order. Both the person whose identity was "stolen" and the

4

targeted company were victims entitled to restitution for economic losses caused by the defendant's conduct. Here, as in *Kelly*, both K.M. and Galileo are direct crime victims.

Moultry notes that only K.M. "was specifically identified in the charges." But all direct victims of a crime are entitled to restitution "whether or not those victims are named in the charging document." (*People v. Walker* (2014) 231 Cal.App.4th 1270, 1276.) In the information, the People alleged Moultry committed identity theft and he "used that information for an unlawful purpose." The unlawful purpose was using the information to obtain the Galileo job. The People said Moultry committed the identifying information theft crime "with the intent to defraud." Moultry defrauded Galileo.

Moultry's reliance on *People v. Birkett* (1999) 21 Cal.4th 226 is misplaced. There the court said, "Nothing indicates the electorate intended to encompass each and every economic consequence that *might incidentally* be incurred by persons or entities *far removed from the crime itself*." (*Id*. at p. 244, italics added.) But Galileo was not removed from the crime; it was the direct target of it. Moultry admitted his sole purpose of committing the crimes was to obtain employment from Galileo. The police investigation centered on Moultry's use of the false documents at Galileo. The prosecutor said the background check led to the discovery of the crime.

Moultry speculates that Galileo did not suffer an economic loss because it routinely conducts background checks on all applicants for employment. Moultry did not present evidence to support this claim. The People note, had Moultry "not applied for employment using a fraudulent identity and credentials, Galileo would not have expended resources to verify [his] information."

Even if employers find a benefit for paying for background checks for legitimate applicants, that does not mean they should have to bear those costs after being criminally victimized by a counterfeit applicant.

To deny restitution to Galileo would force it to suffer the economic loss for incurring these costs. "That would mean the victim would incur the losses instead of the one whose criminal conduct caused them." (*People v. Kelly*, *supra*, 59 Cal.App.5th at p. 1180.) This undermines the purpose of the restitution laws.

Galileo presented its statement of $2,230 in economic losses because of Moultry's conduct. Because of that, "the burden [shifted] to the defendant to prove by a preponderance of the evidence that the loss is other than that claimed." (*People v. Selivanov* (2016) 5 Cal.App.5th 726, 788.) Moultry did not meet this burden because he presented no evidence at the restitution hearing. (*People v. Keichler*, *supra*, 129 Cal.App.4th at p. 1048 ["Given defendant's *failure to offer any evidence* to challenge any of the amounts presented, the trial court did not abuse its discretion in awarding those amounts" (italics added)].)

DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.　　　　　PERREN, J.

6

Matthew G. Guerrero, Judge

Superior Court County of San Luis Obispo

_____

Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.