Filed 10/22/24  P. v. Ewell CA1/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GEREMY DELEON EWELL,<br><br>    Defendant and Appellant. | A168326<br><br>(Contra Costa County<br>Super. Ct. No. 04-22-00443) |

Defendant Geremy Ewell pled guilty to three child-molestation offenses, two against his stepdaughter (stepdaughter) and one against his niece (niece).  He was sentenced to 30 years in prison.  He now appeals from a trial court order awarding $200,000 in restitution to stepdaughter for noneconomic losses, claiming that insufficient evidence supports the award.  We disagree and affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

In June 2021, a few days after stepdaughter turned 13 years old, Ewell went into her bedroom early in the morning and led her to another room.[1]

_____

[1] The underlying facts are drawn from the preliminary hearing transcript.  Because the reporter's transcript of the plea hearing is not in our record, it is unclear what the stipulated factual basis for the plea was.

Ewell removed his pants and stepdaughter's pants and underwear before forcing her to the ground. He then "rubbed his penis against [her] vagina," got on top of her, and "started trying to put his penis in [her] mouth." Stepdaughter tried to keep her mouth closed, but Ewell pinched her nostrils shut so she had to open her mouth to breathe.

Ewell then "put his penis so far into [stepdaughter's] mouth that it hurt and it hit the back of her throat." After about 10 minutes, he ejaculated in her mouth. Around the same time, stepdaughter's mother forced her way into the room and saw her daughter and Ewell with their clothing off. He fled the home, and the incident was reported to the Contra Costa County Sheriff's Department.

A sheriff's detective testified about a forensic interview of stepdaughter that occurred a few days later. In addition to the incident described above, stepdaughter disclosed several other instances of sexual abuse. The earliest one was in September 2020, when Ewell rubbed his penis against her vagina through her clothing while she was playing with her toddler brother. She also described incidents of oral copulation, sodomy, and other sexual touching. She estimated that Ewell forced her to orally copulate him "at least [thirteen] times," orally copulated her seven or eight times, and "sodomized her about ten times." Ewell told stepdaughter "not to tell anyone because they would both get in trouble and he would go to jail."

In November 2022, Ewell was charged by information with 20 felony counts, 16 against stepdaughter between September 2020 and June 2021 in Contra Costa County and the rest against niece between January 2017 and January 2020 in Riverside County.[2] As to stepdaughter, he was charged with

---

[2] Because Ewell does not challenge the award of noneconomic restitution to niece, we do not discuss the underlying facts pertaining to her.

eight counts of forcible lewd acts against a child under age 14, five counts of aggravated sexual assault (oral copulation) of a child under 14, and three counts of aggravated sexual assault (sodomy) of a child under 14. As to niece, he was charged with three counts of forcible lewd acts against a child under 14 and one count of aggravated sexual assault (sexual penetration) of a child under 14.[3] The information also alleged that all 11 counts of forcible lewd acts were committed against more than one victim under the One Strike law and that Ewell had a prior strike.[4] Finally, several aggravated circumstances were alleged under California Rules of Court, rule 4.421.

In March 2023, under a plea agreement, Ewell pled guilty to three counts of forcible lewd acts, two against stepdaughter (including one based on the June 2021 incident) and one against niece. At the sentencing hearing later that month, Ewell admitted the aggravating circumstances that the victims were particularly vulnerable and he took advantage of a position of trust to commit the crimes. The trial court then sentenced him to the agreed-upon term of 30 years in prison, composed of three consecutive upper terms of 10 years. The remaining counts and enhancements were dismissed.

Before the sentence was pronounced, the prosecutor read the following victim impact statement from stepdaughter's mother into the record: "I really don't have anything to say, but I hate you. You ruined my life; my

---

[3] The charges were brought under Penal Code sections 288, subdivision (b)(1) (forcible lewd acts), and 269, subdivisions (a)(3) (oral copulation), (a)(4) (sodomy), and (a)(5) (sexual penetration). All further statutory references are to the Penal Code unless otherwise noted.

[4] The One Strike allegations were made under section 667.61, subdivisions (e) and (j)(2), and the prior strike was alleged under sections 667, subdivisions (a)(1), (d), and (e), and 1170.12, subdivisions (b) and (c), based on a 2014 conviction of criminal threats under section 422, subdivision (a). A One Strike allegation that Ewell kidnapped stepdaughter during the June 2021 incident was dismissed before he entered the plea.

3

child's life. I wish I never met you, and I hope you rot in prison and hell after. Our life is screwed up because of you. My daughter is all messed up, can't even be a normal happy teen, because of what you took her through. I hate you, Geremy, you pedophile."

The People sought noneconomic restitution from Ewell of $200,0000 to stepdaughter and $100,000 to niece. In support of the motion, the prosecution relied on studies showing that sexually abused children as a group experience negative psychological effects. Ewell objected that the prosecution had failed to submit any evidence "that the complaining witnesses have suffered from particularized trauma as a result of [his] conduct, as opposed to generalized claims about child victims of sexual abuse." Ewell noted that neither stepdaughter nor niece testified at the preliminary hearing and "[n]o documentation has been submitted from [them], their families, or any professional evaluators regarding emotional or other harm."

Before the July 2023 restitution hearing, the People submitted a victim impact statement from niece in which she described the emotional harm Ewell's acts caused her. In a supplemental brief, the prosecution stated it "intend[ed] to ask the court to take notice of the victims' statements during the course of their interviews that were admitted into evidence . . . at the preliminary hearing" and might "provide additional impact statements . . . in writing."

At the restitution hearing, the trial court stated it had niece's statement and was "familiar with the underlying conduct" from presiding over the preliminary hearing. The court disagreed with Ewell's position "that there's no indication there was a significant impact on these two [victims]

4

. . . . I think there has been presented to the Court significant evidence of how [his conduct] has impacted these victims."

When asked for any further argument, Ewell's trial counsel rested on the defense's written objection, noting that stepdaughter had not submitted "anything . . . about her personal feelings on restitution." The prosecutor responded that "the conduct in the case was particularly heinous, involving very forceful acts of [an] extremely violent nature against very young girls. It is clear, just on the face of the facts of the case alone, that those victims suffered significant lifelong harm." He also explained that "the reason that the case resolved for a determinate term" was "because [stepdaughter's] mother expressed concern that her daughter would run[]away, or even take more drastic action" if called to testify. He had "attempted to gain impact statements from [stepdaughter's] family, but they have been so overwhelmed by this and are struggling so much to cope with the effects on [her], that even the thought of submitting an impact statement is overwhelming to them, so they do wish restitution."

The prosecutor also offered to produce "a number of juvenile reports . . . pertaining to [stepdaughter], if the Court feels it needs more documentation of the pain that she had suffered." The court responded, "No, I don't feel like I need more of a record." It then ordered the requested amount of noneconomic restitution to each victim.

## II.
### DISCUSSION

Ewell argues that the trial court abused its discretion by awarding noneconomic restitution to stepdaughter because there was insufficient "evidence of the actual harm [she] suffered." We are not persuaded.

Trial courts are required to award full restitution " ' "in every case . . . in which a crime victim suffers a loss." ' " (*People v. Giordano* (2007)

5

42 Cal.4th 644, 655 (*Giordano*); § 1202.4, subd. (f).)  Usually, a restitution award " 'reimburses [a crime victim] only for economic losses.' " (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1181.)  Under section 1202.4, subdivision (f)(3)(F), however, courts must order restitution to reimburse victims for "[n]oneconomic losses, including, but not limited to, psychological harm, for felony violations of Section 288, 288.5, or 288.7."  It is undisputed that this statute applies here because Ewell was convicted under section 288.

We review a restitution order for an abuse of discretion.  (*Giordano*, *supra*, 42 Cal.4th at p. 663; *People v. Gomez* (2023) 97 Cal.App.5th 111, 116 (*Gomez*).)  Under this standard, " ' "[n]o abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered." ' " (*Gomez*, at p. 116.)  But there must be " ' " 'substantial evidence, contradicted or uncontradicted,' to support the trial court's findings." ' " (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045; see *People v. Lehman* (2016) 247 Cal.App.4th 795, 804.)

"Section 1202.4 does not provide guidelines for evaluating a child victim's noneconomic damages for sexual abuse.  Unlike economic damages, which encompass 'objectively verifiable monetary losses' (Civ. Code, § 1431.2, subd. (b)(1)), noneconomic damages compensate the victim for 'subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, [and] emotional distress . . . .' (Civ. Code, § 1431.2, subd. (b)(2).)" (*People v. Valenti, supra*, 243 Cal.App.4th at p. 1182; *Gomez, supra*, 97 Cal.App.5th at p. 115.)  The party seeking restitution has the burden of proof by a preponderance of the evidence, but "the evidentiary bar is a low one." (*Gomez*, at p. 119; *People v. Lehman, supra*, 247 Cal.App.4th at p. 803.)  "[S]ection 1202.4 does not require any particular kind of proof to establish a victim's losses," and a victim need not "present

testimony or a statement about the impact, something prosecutors and trial courts may be reluctant to require, particularly when the victim is still a minor." (*Gomez*, at pp. 119–120; *Lehman*, at p. 803.)

Nonetheless, "some evidence of the harm incurred by the *particular victim* of the crime is required to support a victim restitution award. . . . [I]t is insufficient that the *average victim* would suffer injury from a particular type of crime, or that *generally* victims of such crimes suffer injury." (*Gomez*, *supra*, 97 Cal.App.5th at p. 118.) In *Gomez*, Division Five of this court reversed an award of noneconomic restitution where there was "*no* evidence of the impact of [the] appellant's crimes on [the victim], and the trial court relied exclusively on its experience and common sense regarding similar incidents in awarding restitution." (*Id.* at p. 119.)

Relying on *Gomez*, Ewell argues there was insufficient evidence of harm and the trial court thus improperly relied on "the nature of [his] crimes and not the effect of those crimes on [stepdaughter]." Although he acknowledges stepdaughter's mother's statement at the sentencing hearing, he claims it was insufficient because it did not address the "specific impact" his acts had on stepdaughter. But her mother stated that Ewell had "ruined" and "screwed up" stepdaughter's life and that stepdaughter was "all messed up" and could not "even be a normal happy teen . . . because of what [he] took her through." Statements "by the victim's parents" are acceptable evidence of noneconomic damages (*Gomez*, *supra*, 97 Cal.App.5th at p. 119), and Ewell does not cite any authority suggesting this description of harm was too vague to prove noneconomic damages. Also, the prosecutor represented that the plea bargain was prompted in significant part by the worry that stepdaughter would run away "or even take more drastic action" if she had to testify, supporting a reasonable inference that the crimes traumatized her.

Ewell also objects that the trial court did not actually rely on stepdaughter's mother's statement in ruling. But in performing our review, "we presume that a judgment or order of the trial court is correct, ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' " (*Giordano*, *supra*, 42 Cal.4th at p. 666.) Thus, the court's failure to mention the mother's statement is not determinative. Nor do we find it significant that the court stated it was "familiar with the underlying conduct" from presiding over the preliminary hearing. Although Ewell is correct that no evidence of the effect of the crimes on stepdaughter was presented during that proceeding, the court's brief reference hardly conveyed *exclusive* reliance on the preliminary hearing to conclude that noneconomic restitution was warranted.

In short, the record contains sufficient evidence that Ewell's actions emotionally traumatized stepdaughter to meet the low bar of proving noneconomic damages. As a result, Ewell fails to demonstrate that the trial court abused its discretion by awarding restitution to her.

## III.
### DISPOSITION

The July 14, 2024 awarding noneconomic restitution to stepdaughter and niece is affirmed.

_____

Humes, P.J.

WE CONCUR:

_____

Banke, J.

_____

Hill, J.*

\*Judge of the Superior Court of the County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*People v. Ewell*  A168326

9