Filed 3/28/14  P. v. Kuivenhoven CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DIRK JOHANNAS KUIVENHOVEN,<br><br>      Defendant and Appellant. | A137019<br><br>(Solano County<br>Super. Ct. No. FCR263266) |

After conviction for theft from an elder, forgery, and other offenses, defendant was ordered to pay $85,637 in restitution to the victim as a condition of his probation. He appeals the amount of the award.  We agree the record does not support the amount of the award, and will modify the probation order to reduce the award to $30,242.

## I.  BACKGROUND

Defendant was charged by amended information with theft from an elder or dependent adult (Pen. Code,[1] § 368, subd. (d)), forgery (§ 470, subd. (d)), grand theft (§ 487, subd. (a)), identity theft (§ 530.5, subd. (a)), obtaining money, labor, or property by false pretenses (§ 532, subd. (a)), and second degree commercial burglary (§ 459).  As to all counts, the information alleged that defendant intentionally took, damaged and destroyed property of a value exceeding $200,000.  (§ 12022.6, subd. (a)(2).)

A jury found defendant guilty of all counts and found the monetary enhancement allegations to be true.  The trial court suspended imposition of sentence and placed

---

[1] All further statutory references are to the Penal Code.

defendant on probation for five years with a condition of 300 days in jail.  On January 26, 2012, defendant filed a notice of appeal from his convictions.[2]  On October 31, 2012, the trial court ordered payment of restitution as a modified condition of defendant's probation.  Defendant timely appealed from the restitution order.

## A. *Prosecution Evidence*

James DiPietro, age 69 in 2006, was looking into refinancing his home to lower his interest rate and get some cash from his equity.  He responded to a flyer he received in the mail from Transamerica Financial.  Svetlana Conway came to DiPietro's home to give him an estimate.  She wrote out a proposal for a bank loan of $300,000 representing DiPietro's payments would be lowered to $850 a month, he would receive $40,000 from the equity, and the payments would increase slightly over the next few years.  A week to 10 days later defendant, Conway, and a notary arrived at DiPietro's home to have him sign the loan documents.

After DiPietro signed a few documents, he saw the schedule of payments and realized it was vastly different than previously represented by Conway.  Instead of $850 a month, the payments were $1,600 and $1,700 a month and the interest rate was "sky high."  The loan also had a variable interest rate which DiPietro had not expected.  The payments would have increased to $2,850.  Despite defendant's insistent attempts to convince him otherwise, DiPietro refused to sign any more loan papers, and defendant, the notary, and Conway left.  DiPietro testified he signed a release document that defendant assured him would prevent the loan from going through.

About two weeks later, DiPietro received a check for approximately $47,000 from Chicago Title Company in Vacaville.  He contacted the company to find out why he had received the funds.  He sent the check back to the title company, but it was sent back to him.  DiPietro went to the police but they did not believe him initially.  He met with the manager of the title company, Becky Larson, and discussed with her which documents he

---

[2] Defendant's appeal from the convictions, case No. A134608, was dismissed after he failed to surrender for custody under the terms of his probation.  Defendant subsequently surrendered.

had actually signed and which documents he believed had been forged. DiPietro returned to the police department with Larson, and they opened an investigation. DiPietro deposited the title company check into his bank account on the advice of a lawyer who told him to use it to make payments on the loan. DiPietro made payments on the loan as long as he could, to avoid losing his home. Eventually, he could no longer keep up with the payments and declared bankruptcy.

At trial, Conway corroborated DiPietro's testimony. She testified defendant had instructed her to tell DiPietro the loan had a fixed rate, not a variable rate. He told her to increase the amount of DiPietro's income on his loan application to World Savings, the lender Transamerica Financial was working with at the time. She testified defendant told DiPietro where to sign on a document giving him notice of his right to cancel the loan, and led him to believe that by signing the document he was canceling the loan. However, DiPietro signed the line acknowledging notification, not the actual cancellation line. Conway admitted defendant instructed her to finish signing the documents and take them to the title company, and testified he coerced her into doing so when she objected. Both Conway and defendant received fees linked in part to the amount of the loan and its interest rate.

After defendant learned of the police investigation, he told Conway to say DiPietro signed the documents, was drunk at the time, and had undergone hand surgery so his signature might change. She was also to say defendant was not involved in the transaction and was only present to drive her there because she had a flat tire. She did as he directed initially. Conway later changed her mind, pleaded guilty to two felonies, and agreed to provide testimony in defendant's case.

**B.** *Restitution Order*

At the restitution hearing, the prosecution presented a damages chart and settlement statement from Chicago Title Company dated May 16, 2006 showing that as a result of the World Savings loan, the total debt against DiPietro's property increased by

$102,864,[3] for which DiPietro paid increased monthly principal of $738.60 per month for 75 months (totaling $55,395) and incurred accrued interest of $17,311.[4] In addition, the chart showed a notary fee of $150 that DiPietro apparently paid outside of the escrow closing. Other transaction costs were paid out of the loan proceeds. In addition, part of the loan proceeds were applied at the closing to pay off credit card balances owed by DiPietro (totaling $42,822), and another $47,261 of the proceeds were paid by check to DiPietro, for a total of $90,083 in financial benefits and cash payments received by DiPietro from the loan. The prosecution argued DiPietro was entitled to restitution equal to the sum of $102,864 (the increased amount of the loan over DiPietro's prior mortgage debt), plus $55,395 (the increased principal payments he made), plus $17,311 (accrued interest he paid), plus $150 (the notary fee paid outside of escrow), minus the $90,083 in payments received or benefitting him, for a net total of $85,637. The prosecution also requested $206,440 in attorney fees and costs incurred by DiPietro as a result of the fraudulent loan. The trial court awarded DiPietro restitution in the amount of $85,637.

## II. DISCUSSION

Defendant contends the restitution award impermissibly double-counts part of the increased amount of DiPietro's loan by failing to recognize that the principal payments DiPietro made reduced the size of his loan debt. According to defendant, the court should have first (1) subtracted the total of the principal payments DiPietro made ($55,395) from the increased loan amount ($102,864) to reduce the latter figure to $47,469; (2) added that reduced amount of $47,469 to the sum of DiPietro's principal payments and accrued interest ($55,395 + $17,311 + $47,469 = $120,175); (3) added the $150 escrow fee to the resulting sum of $120,175; and then (4) subtracted DiPietro's

_____

[3] The total debt increase amount of $102,864 was calculated based on the difference between the principal amount of the World Savings loan ($320,000) and the sum of the remaining principal balances of the two mortgage loans that were paid off at the May 16, 2006 closing ($187,136 + $30,000).

[4] We are unable to determine from the record where the principal payment and accrued interest figures came from, but defendant does not contest them and we will assume for purposes of analysis they are correct.

4

financial benefit from the loan ($90,083), to arrive at a restitution award of $30,242.[5]  We agree in substance with defendant's position.

Former section 1202.4, subdivision (a) (as it read in 2006) provided as follows for restitution to victims of criminal offenses:  "It is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime."  Restitution is mandatory upon a showing of economic loss by the victim: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record." (§ 1202.4, subd. (f).)  Victim restitution under section 1202.4, becomes a restitution condition of probation if probation is imposed.  (§§ 1202.4, subd. (m), 1203.1, subd. (j.)

An order for restitution is reviewed for abuse of discretion.  (*People v. Giordano* (2007) 42 Ca1.4th 644, 663.)  Under that standard, the trial court must have a factual and rational basis for the amount of restitution it orders.  (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.)  The same holds true for restitution imposed as a condition of probation.  (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1125.)  The amount of restitution must be proved by a preponderance of the evidence.  (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542–1543.)

The People fail to satisfactorily explain why it is not double-counting to include as DiPietro's economic losses both the full amount of the increased loan obligation that he assumed as a result of defendant's conduct *and* the principal payments he made to pay off and reduce that obligation.  The People state:  "The victim's increased debt was the underlying basis for the restitution award, reduced only by the cash the victim received as

---

[5] Defendant follows this method but gets his arithmetic wrong and arrives at an incorrect figure of $30,277.

5

proceeds. The victim's payments toward that increased debt were properly accounted for by the trial court's clearly-stated method of calculation. . . . The principal may later have been reduced by the victim's application of the check to payment of the loan, but that check had already been deducted from the restitution amount in the first calculation and could not properly be deducted again." The People apparently contend that because DiPietro assertedly spent his cash payout of $47,261 to fund loan payments, subtracting the full amount of his principal payments from his economic loss, as defendant's calculation effectively does[6] would result in a double deduction for the cash payout he received.

We are not persuaded. First, as a matter of arithmetic, defendant's proposed formula does not in fact double-count the cash payout. The difference between defendant's proposed restitution award and the trial court's award is $55,395, which is the amount of the principal payments, not $47,261, the amount of the cash DiPietro received at the closing. It is therefore not correct that defendant's proposed formula doubly deducts the cash payout from DiPietro's economic loss. It properly deducts the payout once to account for the fact that DiPietro was able to use it to reduce the principal owing on the increased debt by $47,261, *at no further expense to himself*. As discussed in the next paragraph, additional principal payments he did make at his own expense do not add to his losses, they only affect how the loss is categorized.

Second, defendant is correct that it is double-counting to include as DiPietro's losses *both* the full amount of his increased debt on the closing date, *and* the amount of the principal payments he subsequently made on that debt. Suppose person A wrongfully causes person B to become indebted to World Savings for $100, and B then immediately repays the debt in full to avoid having to pay interest. B's repayment does not *increase* his loss from $100 to $200, nor for that matter does it eliminate the loss. It merely changes the form of the loss from an outstanding debt to an out-of-pocket payment.

---

[6] The difference between the restitution amount awarded of $85,637 and the $30,242 award arrived at by correctly applying defendant's proposed methodology is $55,395—the exact amount of DiPietro's principal payments.

6

Whether B repays $10, $20, $100, or zero dollars on the debt, his economic loss (disregarding interest), is still $100. It does not change each time he makes a repayment of principal. If anything, the making of principal payments actually reduces the economic cost attributable to the loan by reducing the interest that would otherwise accrue on it.

The restitution amount in this case should have been determined by adding together the original amount of the increased debt resulting from the World Savings loan ($102,864), the interest DiPietro paid on the increased debt ($17,311), and the notary fee he paid outside of escrow ($150), and then subtracting from the total of those three items the sum of the cash payout he used to pay down the debt principal ($47,261) and the prior credit card debt paid at escrow ($42,822) to arrive at a restitution award of $30,242. Principal payments are not used in the calculation because they do not in themselves add to or decrease DiPietro's loss. While this calculation is slightly different from that proposed by defendant, it is arithmetically equivalent.

Finding no factual or rational basis in the record for the trial court's restitution award of $85,637, we will modify the probation order to reduce the amount of restitution to $30,242.

## III. DISPOSITION

The probation modification order of October 31, 2012 is modified to specify that defendant shall pay restitution to the victim in the amount of $30,242 rather than $85,637. As so modified, the order is affirmed. The trial court is directed to amend its records to reflect the modification and to forward the appropriate amended documents to defendant and to the probation department.

_____
Margulies, Acting P.J.

We concur:


_____
Dondero, J.


_____
Becton, J.*

---

8