Filed 8/7/14  In re Fred F. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re FRED F., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>FRED F.,<br><br>        Defendant and Appellant. | A140481<br><br>(Napa County<br>Super. Ct. No. JV16764) |

**I.**

**INTRODUCTION**

Fred F. (appellant) was ordered to pay direct victim restitution in the amount of $23,063.92.  He contends on appeal, as he did in the juvenile court below, that the injuries for which restitution was ordered were not reasonably related to his conduct, nor was the restitution award reasonably related to his future rehabilitation.  We disagree, and affirm.

**II.**

**FACTUAL AND PROCEDURAL BACKGROUNDS**

On March 29, 2011, a juvenile wardship petition (Welf. & Inst. Code**,** § 602, subd. (a)) was filed by the Napa County District Attorney's Office alleging that appellant committed felony resisting arrest (Pen. Code, § 148, subd. (a)(1)), and two misdemeanor counts of vandalism (Pen. Code, § 594, subd. (b)(2)(A)), and cutting a utility line (Pen.

1

Code, § 591). As to the felony count, it was also alleged that appellant resisted arrest with the specific intent to promote, further, and assist a criminal street gang, and to benefit the gang, within the meaning of Penal Code section 186.22. subdivision (d).

Subsequently, appellant was declared a ward of the court following his admissions to allegations of misdemeanor resisting arrest and vandalism. He also admitted as true the criminal street gang enhancement alleged in the petition. He was placed on probation with conditions imposed.

A supplemental wardship petition was filed on December 20, 2011, alleging appellant had committed a misdemeanor crime by giving false information to a police officer (Pen. Code, § 148.9, subd. (a)), and that he had violated the terms of his probation by violating his curfew condition by his consumption of alcohol, and by associating with persons known to him to be members of a criminal street gang. The probation officer's detention report noted that appellant, then 15 years old, "was attending a party well past curfew where there were numerous known Norteño criminal street gang members." There were large amounts of alcohol and marijuana at the party, and appellant ran from law enforcement when they arrived to break up the party. The report noted also that although appellant had not been a ward of the court for very long, "his involvement with criminal street gangs and his substance abuse history is very concerning." Appellant thereafter admitted he had violated his probation by staying out after curfew and drinking. Appellant was continued as a ward of the court and his probation extended on January 11, 2012.

Less than one month later, a supplemental wardship petition was filed alleging two misdemeanor counts of prowling (Pen. Code § 647, subd. (h)), and trespass (Pen. Code § 602, subd. (m)). The supplemental petition also alleged that appellant had violated the terms of his probation by violating his curfew condition, and by consuming alcohol. Appellant thereafter admitted the charges. In a subsequent probation report filed in connection with the supplemental petition disposition, the author noted that appellant admitted prior involvement with the Norteño street gang, and that he had been identified

2

as such by law enforcement. Appellant was continued as a ward of the court and his probation extended on March 14, 2012.

On December 12, 2012, the Napa County District Attorney filed a subsequent delinquency petition (Welf. & Inst. Code, § 602, subd. (a)) and probation violation notice (*id*. at § 777), which alleged that appellant committed assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), and assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)). The petition also alleged a violation of probation by appellant possessing alcoholic beverages and associating with a gang. A special allegation was also contained in the petition alleging that appellant committed the assaults for the benefit of a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)(A)).

A detention report filed that same day by the probation department described the incidents underlying the most recent filing as arising out of a fight occurring on August 17, 2012 (the August 17 incident). The fight involved several individuals, including appellant, and included the use of weapons including batons, chains and knives. At least one victim was reported to have been stabbed. During the event, appellant threw a bottle at another victim causing injury. Early the next morning after the fight, police interviewed appellant at his home during which the odor of alcohol was detected. A test confirmed that he had been drinking.

On December 7, 2012, the probation department conducted a search of appellant's residence. An individual known to be a street gang member was found in the garage, along with two open bottles of beer, five unopened bottles of beer, and a liter bottle of vodka.

Appellant entered into a negotiated disposition on February 25, 2013, wherein the court granted the prosecutor's motion to add as count four that appellant disturbed the peace for the benefit of a criminal street gang, a felony (Pen. Code, §§ 415, 186.22, subd. (d)). Appellant then admitted count three (violation of probation) and the new count four. The court found the admitted count (count four) to be a felony. On the prosecutor's motion, the court dismissed counts one and two and the street gang enhancement pertaining to those two allegations.

3

On April 3, 2013, the court continued appellant's wardship and placed him at home with terms, including that he be ordered to pay victim restitution. On October 2, 2013, appellant challenged the proposed restitution. At the December 4, 2013 continued restitution hearing, the court ordered appellant to pay restitution in the amount of $23,063.92.

Appellant timely appealed the restitution order.

## III.

## DISCUSSION

Appellant does not challenge the amount of the restitution order. Indeed, the reasonableness of that amount was conceded by his counsel at the restitution hearing below. Instead, he contends that the trial court erred in assessing *any* restitution against him because there was no causal connection between the crimes he admitted and the victim's injuries.

On appeal, we review the trial court's order regarding restitution fines and victim restitution for abuse of discretion. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542; *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.) We will not reverse the order unless it is arbitrary and capricious. (*People v. Gemelli*, *supra*, at p. 1542.) If there is a rational and factual basis for the amount of restitution ordered, an abuse of discretion will not be found. (*Ibid*.)

When imposed as a condition of probation, restitution is not limited to losses directly caused by the minor's criminal conduct. (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1247-1248; *In re T.C.* (2009) 173 Cal.App.4th 837, 847; *In re I.M.* (2005) 125 Cal.App.4th 1195, 1209-1210.) "That a defendant was not personally or immediately responsible for the victim's loss does not render an order of restitution [as a condition of probation] improper. . . . [T]he question simply is whether the order is reasonably related to the crime of which the defendant was convicted or to future criminality." (*In re I.M.*, *supra*, at p. 1209; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1123; *People v. Lent* (1975) 15 Cal.3d 481, 486-487.)

4

Thus, "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]" (*People v. Lent*, *supra*, 15 Cal.3d at p. 486.)  "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term.  [Citations.]  As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality.  [Citation.]" (*People v. Olguin* (2008) 45 Cal.4th 375, 379-380; *In re T.C.*, *supra*, 173 Cal.App.4th at p. 847.)

For example, in *In re I.M.*, *supra*, 125 Cal.App.4th 1195, the minor, a gang member, acted as an accessory after the fact to a murder committed by a fellow gang member.  He had approached the victims along with the shooter.  After the shooter issued a gang challenge and shot at the victims, the minor and the shooter ran away together, and the minor held the gun for the shooter.  On these facts, *In re I.M.* held a restitution order requiring the minor to pay for the victim's funeral expenses was reasonably related to his offense of being an accessory after the fact.  (*Id.* at pp. 1208-1210.)  Although the minor's offense of being an accessory after the fact took place after the murder occurred, the minor had been "promoting and assisting gang conduct" that led to the loss.  (*Id.* at p. 1210.)  The restitution order thus served a rehabilitative purpose by making the minor aware of the consequences of his gang membership "by compelling him to share responsibility for the gang-related activities in which he in some way participated." (*Ibid.*)  It also forced him to face the "emotional and financial effects of gang-related activity on the family of the victim," and was therefore directly related to his future criminality.  (*Ibid.*)

These authorities compel our affirmance of the trial court's restitution order here.  There is no question that the incident on August 17, 2012, which resulted in the stabbing of the victim, arose out of a fight involving multiple individuals.  Although there is no evidence that appellant was the combatant who actually stabbed the victim, he admitted

that his participation in the event was a felony disturbance of the peace and that this conduct was for the benefit of a criminal street gang.

Therefore, we conclude that the restitution order relating to the victim's medical expenses and other losses were reasonably related to the crime admitted by appellant, which included the street gang enhancement. Certainly, there was not abuse of discretion in the juvenile court implicitly finding a nexus between appellant's conduct and the injury to the stabbing victim.

Even more compelling is the evidence that the restitution order was reasonably related to curbing future criminal misconduct by appellant. The August 17 incident was not appellant's first involvement with criminal activities. He admitted the truth of allegations of misdemeanor resisting arrest and vandalism, as well as the criminal street gang enhancement alleged in the first wardship petition filed on March 29, 2011. The Welfare and Institutions Code section 790 report ordered by the juvenile court as part of the disposition relating to that initial wardship petition expressed serious concern about appellant's behavior, including his potential for future criminality: ". . . Since being enrolled at Liberty High School the minor has been involved in a verbal altercation with a rival gang member. . . . During the alleged offense, he was stopped in the area of a gang altercation wearing clothing which appeared to be gang related and admitted to the arresting officers he associates with Norteños. . . . During the course of the dispositional interview, it appeared to the undersigned that the minor was not taking the Court process seriously. The minor accepted no responsibility for his behavior and showed no remorse during his interview. . . . Due to the minor's multiple areas of concern, including apparent gang association, substance abuse, his parents['] inability to control his behavior, and his apparent disregard for the Court and probation process, it appears he is in need of more services than a grant of Deferred Entry of Judgment will provide."

Several months later, as alleged in a supplemental wardship petition filed in December 2011, the probation department noted in its detention report that then-15-year-old appellant "was attending a party well past curfew where there were numerous known Norteño criminal street gang members." There were large amounts of alcohol and

marijuana at the party, and appellant ran from law enforcement when they arrived to break up the party. The report notes also that although appellant had not been a ward of the court for very long, "his involvement with criminal street gangs and his substance abuse history is very concerning." As noted above, appellant admitted the charge and that he had violated his probation by staying out after curfew and drinking.

Less than one month later, yet another supplemental petition was filed which resulted in appellant admitting a violation of probation, including being out past curfew and drinking alcohol.

The dispositional report filed in connection with the August 17 incident and appellant's subsequent probation violation when he was found with a Norteño gang member in his home with alcohol present, profiled appellant's escalating delinquency. The report reemphasized appellant's seemingly intractable substance abuse problems, his ongoing associations with criminal street gang members, and perhaps most of all, his lack of responsibility and acknowledgement that his conduct was unacceptable and was causing harm to himself, his family, and others. Indeed, the report concluded by pointing out that appellant continued to have an ongoing association with gang members, and a persistent failure to acknowledge a problem with alcohol: "The target areas of concern the minor needs to address to be successful on probation and to reduce possible recidivism include peer relations and attitudes/orientation." Thus, the report concludes that "[t]he minor needs to realize the gravity of the situation, as well as the negative effects his gang involvement has on his family." Among the probation terms and conditions recommended by the report is that "[appellant] pay restitution to the victims "in an amount to be determined."

There is no doubt that the imposition of restitution was directly related to reducing appellant's future criminality—the probation report says as much. Moreover, the record confirms that appellant was found repeatedly to be in violation of his original probation by associating with criminal street gang members, and by engaging in underage drinking. He also exhibited indifference to the juvenile court processes, disregarded efforts to rehabilitate and reform him, and showed an unwillingness to accept responsibility for the

7

consequences of his actions. This evidence is precisely the type of factual underpinning courts have examined in upholding restitution awards to curb future misconduct. (*In re I.M.*, *supra*, 125 Cal.App.4th at pp. 1208-1209 ["Penal Code section 1203.1 confers broad power on the courts to impose conditions to foster rehabilitation and to protect public safety. [Citation.] This power includes ordering restitution, if such a condition is reasonably related to the crime of which the defendant was convicted or to future criminality"]; a proper restitution order in a juvenile case " 'may serve the salutary purpose of making [the juvenile] understand that he has harmed . . . individual human beings, and that he has a responsibility to make them whole.' [Citation.]" (*In re S.S.* (1995) 37 Cal.App.4th 543, 550.)

Appellant points out passages in the record where he was commended for taking affirmative steps to disassociate himself from further gang and criminal activities, and counsel notes that appellant had not come before the juvenile court again since the disposition and restitution hearings giving rise to this appeal. Certainly, these are signs that appellant may indeed be reforming his conduct. However, these recent efforts do not negate the serious and protracted period of time leading up to, and including, the event during which the victim received very serious injury, during which appellant exhibited a seemingly incorrigible attitude towards rehabilitation. In light of the totality of this record there was ample evidence supporting the order of restitution, and we discern no abuse of discretion in imposing the award in this case.

## IV.

## DISPOSITION

The restitution order in the amount of $23,063.92 is affirmed.


_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
RIVERA, J.