Filed 3/23/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JOHN PAUL RIDDLES,<br><br>  Defendant and Appellant. | D069419<br><br><br><br>(Super. Ct. No. SCD238770) |

APPEAL from a judgment of the Superior Court of San Diego County, Runston G. Maino, Judge.  Affirmed.


Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Lynne G. McGinnis and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

In this case, defendant and appellant John Paul Riddles pled guilty to one count of workers' compensation insurance fraud in violation of Insurance Code[1] section 11760, subdivision (a). His conviction grew out of his application for workers' compensation insurance, which fraudulently represented that a number of nurses who had been placed in residential care and skilled-nursing facilities by Riddles's staffing agency were computer programmers. His misrepresentation of the nurses as computer programmers substantially reduced the premium his agency was charged by the workers' compensation insurer that accepted his company's application; accordingly, the trial court required that Riddles pay, as restitution to the insurer, $37,000 in premiums the insurer would have earned in the absence of his misrepresentation.

Contrary to his argument on appeal, a workers' compensation insurer may recover, as restitution under Penal Code[2] section 1202.4, the premiums it would have earned in the absence of misrepresentations by an insurance applicant. (See *People v. Petronella* (2013) 218 Cal.App.4th 945, 968-984 (*Petronella*).) The fact Riddles may have been able to establish that the Labor Code did not require that he provide workers' compensation coverage for the nurses does not relieve him of responsibility for providing the insurer with a fraudulent application or alter the fact the nurses were covered by the policy he obtained.

We also reject his contention that the trial court erred in imposing an $860 fine.

---

[1] Riddles was permitted to plea under the provisions of *People v. West* (1970) 3 Cal.3d 595, 600-601. A plea under *West* allows a defendant to plead guilty to a charge without admitting that he or she committed the crime alleged. (*Ibid.*)

[2] All further statutory references are to the Penal Code unless otherwise indicated.

FACTUAL AND PROCEDURAL BACKGROUND

From at least 2005 until 2009, Riddles operated Confident Care, a staffing agency that placed nurses at residential care and skilled-nursing facilities. One facility expressly required that Confident Care provide workers' compensation insurance for the nurses; the record also shows that Confident Care provided certificates of workers' compensation insurance to other facilities where it placed nurses.

Premium rates for workers' compensation insurance are based on the number of workers employed in various classifications and the amount paid to workers in each classification. Premium rates for computer programmers are as low as 26 cents per $100 of payroll. Premium rates for higher classification workers can be up to $50 per $100 of payroll. Riddles classified the nurses he placed in health care facilities as computer programmers and underreported their payroll.

Although the People's initial complaint, which was filed in January 2012, alleged Riddles had fraudulently obtained workers' compensation for nurses commencing in 2005, Riddles's plea and conviction is based on a workers' compensation insurance policy he obtained for Confident Care from First Comp Insurance (FCI) for the period between January 21, 2007 and January 21, 2008. As a result of Riddles's fraudulent misclassification, Confident Care paid FCI a premium of $554 for the year ending in January 2008; however, an audit of three facilities that contracted with Confident Care during that period showed the agency should have paid FCI a premium of $39,604. Thus, an insurance investigator calculated that FCI lost the audited premium for the year ($39,604) minus the premium Confident Care paid ($554) or approximately $39,000.

Initially, following a restitution hearing, the court ordered Riddles to pay FCI

3

$52,259 in restitution. However, Riddles moved to reconsider and the court amended its order and set restitution at $37,000. Riddles filed a timely notice of appeal.

DISCUSSION

I

Riddles contends the trial court abused its discretion when it ordered him to pay restitution in the amount of premium loss suffered by FCI. We find no abuse of discretion.

Restitution in criminal proceedings is mandated by article I, section 28, subdivision (b) of the California Constitution, and that mandate has been carried out by our Legislature in section 1202.4, which provides in part: "(f) [I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . . The court shall order full restitution." (See *People v. Mearns* (2002) 97 Cal.App.4th 493, 498.) We review a restitution order for abuse of discretion. (*People v. Baker* (2005) 126 Cal.App.4th 463, 467.) " ' " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " ' " (*Ibid*.)

The intent of voters in approving article 1, section 28 of the California Constitution is plain: "[E]very victim who suffers a loss shall have the right to restitution from those convicted of the crime giving rise to that loss." (*People v. Phelps* (1996) 41 Cal.App.4th 946, 950.) Accordingly, " ' " '[a] victim's restitution right is to be broadly and liberally construed.' " ' " (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.)

4

By its terms, the restitution statute allows for recovery of a broad variety of economic losses that are incurred as a result of the defendant's criminal conduct. (§ 1202.4, subd. (f)(3).) The categories for which restitution may be ordered "includ[e], but [are] not limited to" payment for the value of stolen or damaged property, medical expenses, mental health counseling expenses, *wages or profits lost by the victim*, noneconomic losses including psychological harm, interest, attorney fees, moving expenses, extra security, and expenses to retrofit a house or car to make them accessible. (*Ibid.*) However, "[b]ecause the statute uses the language 'including, but not limited to' these enumerated losses, a trial court may compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior, even if not specifically enumerated in the statute." (*People v. Keichler*, *supra*, 129 Cal.App.4th at p. 1046.)

In *Petronella*, the court directly considered whether, as here, a workers' compensation insurer could recover the amount of premium it failed to obtain because over a number of years the defendant had falsely reported the number and payroll of his employees. At his sentencing, the prosecutor presented evidence that, in the absence of defendant's misrepresentations, the insurer would have collected at least $11.6 million in additional premiums. (*Petronella*, *supra*, 218 Cal.App.4th at p. 965.) Nonetheless, the trial court only imposed $500,000 in restitution. On the People's appeal, the Court of Appeal reversed because the trial court had not considered the evidence of premium loss offered by the People. In doing so, although the defendant had not raised the issue, the court expressly found that such a loss of premium was recoverable as restitution under section 1202.4, subdivision (f): "No California case appears to have held the willful

5

underpayment of insurance premiums constitutes an economic loss under Penal Code section 1202.4.  But since 'the statute uses the language "including, but not limited to" the[] enumerated losses, a trial court may compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior, even if not specifically enumerated in the statute.' " (*Petronella*, at p. 969.)  In finding that a loss of premium was a direct result of the defendant's conduct, the court relied on the holding in *United States v. Simpson* (6th Cir. 2008) 538 F.3d 459, which found that "unpaid [workers' compensation] premiums fall squarely within the definition of 'loss' " under federal sentencing guidelines, including the award of restitution to victims.  (*Id*. at p. 462.)  The court in *Simpson* in turn stated:  "When an individual underreports his payroll, he is attempting to take coverage directly and thereby to deprive a carrier of premiums directly." (*Id*. at p. 464.)

In *United States v. Leahy* (6th Cir. 2006) 464 F.3d 773, 799-800, a defendant committed fraud in a manner remarkably similar to the fraud practiced by Riddles: the defendant knowingly classified his warehouse workers as clerical workers.  In requiring restitution of the insurer's lost premium, the court in *Leahy* stated:  "The insurance companies were entitled to the benefit of their bargains—the amount of money they would have charged to insure the actual risk that [the defendant's company] presented. [Citation.]  Otherwise, [the company] would obtain a windfall through its fraud, receiving coverage for greater risks than the amount of premiums merited.  The district court, therefore, did not err in the restitution order when it calculated the entire amount [the company] should have paid and subtracted what it did pay. The remainder returns the insurance companies to the positions they would have occupied absent the fraud." (*Ibid*.)

6

The fact that Riddles's fraud *may* have given FCI a defense to payment to the claimant had a claim been made on the policy would not necessarily relieve Riddles of responsibility to FCI for either payment of an appropriate premium or, if FCI chose, reimbursement from Riddles for the amount of any amount FCI paid the claimant. (See *De Campos v. State Compensation Ins. Fund* (1954) 122 Cal.App.2d 519, 529.) In such circumstance, the insurer, not the fraudulent insured, chooses the insurer's remedy, and, as the court noted in *De Campos*, the insurer may determine that it is in its best interest to pay an innocent worker and seek compensation from a fraudulent employer. (*Ibid.*) Of course, here, because the term of the policy in question had expired by the time Riddles's misrepresentation was discovered, rescission was not a practical remedy for FCI. Rescission would have simply required that FCI return the $554 premium Confident Care paid. Thus, the only realistic remedy for FCI was recovery of a premium that fully compensated the insurer for the risk it in fact covered during the policy term.

Contrary to Riddles's argument, this is not an instance where, as in *People v. Busser* (2010) 186 Cal.App.4th 1503, 1510, even in the absence of the insured's false report about a hit and run accident, the insurer would have been required to pay for damage suffered by the insured and a third party. In that case, we found there simply was no causal link between the defendant's false statements to an accident investigator and payments that, in any event, the insurer was required to make under its policy. (See *ibid.*)

Here, in contrast, the record shows that had Riddles accurately represented that the covered individuals were working as nurses, FCI would have recovered substantially more in premiums. The only circumstance that might break the causal link between Riddles's conduct and FCI's loss of premium is a finding that Riddles would not have

7

paid for *any* coverage for the nurses had he been required to pay for them as nurses; under that very *hypothetical* circumstance, FCI would not lose any premium because the hypothetical assumes an honest Riddles would not have obtained any coverage.  Such a finding, however, is simply not possible on this record, which shows that over a number of years Riddles in fact obtained workers' compensation coverage and was required to do so by at least one of the facilities where the nurses worked.  Those facts make it far more likely than not that Riddles would have obtained coverage, even if he had to pay a higher premium.

We also reject Riddles's contention the nurses' potential status as independent contractors relieved him of responsibility for FCI's losses.  It is indisputable that Riddles obtained coverage for the nurses from FCI and intentionally mischaracterized them.  Their actual status as employees or independent contractors under the workers' compensation law (Lab. Code, § 3700 et seq.) is not a defense to the misrepresentations Riddles made *to FCI* and his consequent violation of Insurance Code section 11760, subdivision (a), which, by its terms, makes it a crime to falsely represent any fact "material to the determination of the premium rate, or cost of any policy of workers' compensation insurance, for the purpose of reducing the premium, rate, or cost of the insurance."  Insurance Code section 11760 does not require that the prosecution establish that a defendant was obligated to provide workers' compensation coverage, only that the defendant made intentional misrepresentations for the purpose of reducing the cost of coverage.

Importantly, as we have discussed, had a nurse made a claim on the policy, Riddles—having fraudulently induced FCI to issue a policy—was in no position to then

8

insist that FCI assert an independent contractor defense. (See *De Campos v. State Compensation Ins. Fund*, *supra*, 122 Cal.App.2d at p. 529; *United States v. Simpson*, *supra*, 538 F.3d at pp. 467-468.) Riddles's representation to nursing facilities that the nurses were covered by a workers' compensation policy, and an injured nurse's likely contention that he or she relied on those representations, would substantially undermine FCI's willingness and ability to assert such a defense. (See *Simpson*, at pp. 467-468.)

Finally, even if FCI was willing to assert an independent contractor defense, contrary to Riddles's argument on appeal, by no means does the record here show that it would have been successful. In particular, our review of the record shows not only that Riddles represented to facilities that he had secured workers' compensation coverage for the nurses, but that Confident Care itself treated them as employees by paying state unemployment and disability insurance for them. This is significant because "whether or not the parties believe they are creating the relationship of employer-employee" (*S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 351) is an important factor a court must look to in determining whether a worker is an employee for purposes of awarding workers' compensation benefits. Because the record shows that in many important respects Riddles treated the nurses as employees, FCI would have been hard pressed to prove they were nonetheless independent contractors.

In sum, the record shows that, for the period in question, FCI was exposed to the workers' compensation risk posed by the nurses working through Riddles's agency; hence, FCI was entitled to recover an appropriate premium for that risk. Accordingly, the trial court did not abuse its discretion in making its restitution order.

## II

Riddles also challenges the trial court's imposition of an $860 fine, which he claims violated the terms of his plea agreement.

As Riddles acknowledges, the change of plea form he signed stated that, among other matters, he understood the trial court might impose a fine of up to $1,000. Prior to accepting the plea, the trial court advised Riddles: "There's usually a fine in these things, but my feeling is that since you're going to be paying some restitution, I probably impose the standard fine we seem to have now and then stay it and then have that paid, if at all, after restitution is paid. That would be, I think, sensible." Riddles then entered his guilty plea to count 3 of the information under *People v. West*.[3] The People moved to dismiss the remaining counts, and the trial court stated: "I can do a 3 year probationary period starting right now, okay? Obey all laws. I'll make a fine of the standard. It seems like on so many misdemeanors it's like 860 bucks. But I'll stay all of that pending a restitution hearing." The court's minute order reflected imposition of the $860 fine, stayed pending the restitution hearing.

Contrary to Riddles's argument on appeal, the trial court did not violate the terms of his plea agreement by imposing the $860 fine. The record is clear that *before* Riddles entered his plea, he was aware that the trial court intended to impose a fine; and he raised no objection thereafter when the $860 fine was imposed. Under these circumstances, where the record shows that the parties left to the trial court the power to set the amount of a fine, the trial court did not err in thereafter imposing a fine within any statutory

---

[3]     See footnote 1, *ante*.

limits.  (*People v. Villalobos* (2012) 54 Cal.4th 177, 179; *People v. Crandell* (2007) 40 Cal.4th 1301, 1309.)

## DISPOSITION

The judgment of conviction is affirmed.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

HALLER, J.