Filed 12/7/20  P. v. Herbert CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D075698, D076472 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN376313) |
| DAVID C. HERBERT, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of San Diego County, Carlos O. Armour, Judge.  Affirmed.

Janice R. Mazu, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Kristen Ramirez, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted David C. Herbert of five counts of animal cruelty (Pen. Code,[1] § 597, subd. (a); counts 1, 3, 4, 5, and 6); first degree burglary (§ 459;

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

count 2); animal abuse and neglect (§ 597, subd. (b); count 7), and four counts of vandalism (§ 597, subd. (a)(b)(2)(A); counts 8, 9, 10, and 11). The jury also found true that, as to count 3, Herbert used a dangerous and deadly weapon (§§ 1192.7, subd. (c)(23) and 12022, subd. (b)(1)).

The court sentenced Herbert to prison for nine years eight months. The court subsequently held a restitution hearing and awarded victim restitution in the amount of $13,970.

Herbert appeals the order awarding $13,970 in victim restitution, arguing the court abused its discretion in awarding such an amount. We affirm.

FACTUAL BACKGROUND

Because Herbert is not challenging his conviction under any counts, we eschew the traditional discussion of the underlying facts of his offenses. That said, we briefly discuss the underlying crimes relating to the family to which the court awarded the challenged restitution amount.

The P. Family had two dogs—Lala, a female golden mix, and Prince, a male toy poodle. Lala was an emotional support animal to one of the P. Family children. On May 30, 2017, two days after the P. Family moved into the house next to Herbert's home, Michelle P. returned home from work and her dogs were missing. Michelle located Prince at her neighbor's house. Her neighbors said both dogs were running around the street earlier that morning, and they placed the dogs back in the P. Family's yard but later discovered Prince running around by himself. Lala has never been found. Michelle testified about the stress her children have suffered as a result of the incident.

Video surveillance showed Lala last outside the P. Family's yard at 11:10 a.m. At 11:23 a.m., the video showed Herbert's car leaving the street.

2

A zoomed-in still photo from the video showed the image of a dog's face in the window of Herbert's car.

A search of Herbert's car revealed the presence of Lala's blood. A baseball bat in Herbert's house had a drop of blood with Lala's DNA on it.

## DISCUSSION

Herbert contends the trial court abused its discretion when it ordered victim restitution in favor of the P. Family in the amount of $13,970. We reject this contention.

On July 26, 2019, the trial court held a restitution hearing during which Michelle testified about the expenses her family incurred as a result of Herbert's crimes. The P. Family's restitution claim was based solely on out-of-pocket expenses and cash losses. Michelle testified that before moving out of the Oceanside residence, the family incurred a $450 expense to have the home's carpets shampooed, a $400 expense to hire a cleaning person, and a $150 expense to have the yard cleaned. The family also incurred a $1,000 expense for rental, mileage, and gas for a U-Haul and trailer used to move out of the four-bedroom Oceanside residence and to a new five-bedroom residence approximately 35 miles away, a $500 expense for movers for two days at $125 a day each, and a $3,300 expense for a CubeSmart storage space in Vista for a period of 20 months at $165 per month. The family also incurred a $4,800 expense due to a rent increase of $200 more per month after moving out of the Oceanside residence. Michelle testified that the family incurred a $1,610 expense for 2,000 copies of fliers announcing their lost dog, at $0.80 each. The P. Family paid cash for the movers, and for the carpet, house, and yard cleaners. Finally, Michelle testified that the family incurred $1,760 in lost wages to take time looking for their dog and attend

court proceedings. The total restitution amount requested by the P. Family was $13,970.

On August 16, 2019, Herbert filed a motion challenging the P. Family's restitution claim. Herbert supported his arguments with a declaration from his counsel and exhibits attached to that declaration. Specifically, Herbert argued that the P. Family's U-Haul rental claim of $1,000 was unreasonable and countered the family's claim with evidence that the Oceanside U-Haul rental company advertises its largest truck rental—advertised as sufficient to move a 3-4 bedroom home—at $149 per day, and a trailer for $77 per day, for a total of $226 per day for both a truck and a trailer. He also argued that the P. Family's storage unit claim of $3,300 (20 months at $165 per month) was unreasonable and countered the family's claim with evidence that CubeSmart in Vista, the same storage facility the P. Family used, charges $133 per month for an eight feet by 10 feet (8' x 10') unit, and $99.75 if booked online. Finally, Herbert argued that the P. Family's claim of $1,610 for 2,000 flyers at $0.80 each was unreasonable and countered the family's claim with evidence that the Kinkos/FedEx in Vista charged $0.30 each for 2,000 color copies for a total price of $606.80. Accordingly, Herbert argued that the P. Family's restitution claim should be limited to $11,768. Thus, the difference between what the P. Family requested and what Herbert claimed was owed amounts to $2,202.

On August 20, 2019, the parties reconvened on the restitution matter, but they did not present any further evidence or argument. The court explained its reasoning when awarding the P. Family restitution:

> "So we're here today. Michelle . . . testified last time we were in court. She testified under oath. Gave an amount of $13,970 as to the full request for restitution under the criminal court. I allowed some time for the defendant to respond to that amount. You have done so, [Herbert's

4

counsel].  And I have reviewed your request to have the Court consider somewhat alternative amounts based on your research and review of storage facilities, trucking companies, et cetera.

"Having reviewed your submitted numbers, I'm still inclined to grant the request as she has made.  And I think that she justified the amount.  Not that your amounts are in any way not accurate.  But like anything else, you can go out and get figures that are probably substantially higher than what she got and figures substantially lower than what she got.  But the question for me is, were her figures reasonable?  And I find that they were reasonable and not excessive and within the scope of what somebody would normally be paying.

"And the nature of the request that she had, which was Court's Exhibit 1, for the last hearing on July 26th carpet cleaning, house cleaning, yard cleaning, rental and mileage for a U-Haul truck and trailer, meant to help move, storage for an extended period of time, fliers for the lost dog, the fact that she had to pay higher rent to move out.

And I'll point out this was an emergency move out of her residence.  So she really didn't have a lot of time, as somebody would normally have, to find comparable residence paying the same amount or less amount of rent.  Brought the subtotal to $12,210.  Lost wages $1,760.  For a total of $13,970.  Unless anybody else wants to argue further it's going to be the Court's order that that be paid out of the bail money."

Herbert's counsel declined the court's offer to argue the issue further.

The rights of crime victims to "full restitution" for losses caused by the crimes of others are contained in the California Constitution Article I, section 28, subdivision (b)(13)(B), and Penal Code section 1202.4, subdivisions (f)(3)(D)-(E).  We review trial court decisions granting restitution under the abuse of discretion standard of review.  (*Luis M. v. Superior Court*

5

(2014) 59 Cal.4th 300, 305.) We will not overturn a restitution order where there is a rational, factual basis for the order. (*People v. Riddles* (2017) 9 Cal.App.5th 1248, 1252.)

Where the restitution order is based upon factual findings, we review such findings under the substantial evidence standard. Under that standard, we review the entire record, drawing all reasonable inferences in favor of the trial court's decision. We do not make credibility decisions or reweigh the evidence. We determine only whether there was sufficient evidence from which a reasonable judge could make such findings. (*People v. Millard* (2009) 175 Cal.App.4th 7, 26; *People v. Thomas* (2017) 15 Cal.App.5th 1063, 1071.) Uncorroborated testimony, if credible, may support restitution unless the testimony is inherently improbable or inherently incredible. (*People v. Panah* (2005) 35 Cal.4th 395, 489.)

Corroboration of a victim's testimony regarding restitution is not generally required. The presence or absence of corroboration can certainly impact the court's assessments of the credibility of the testimony. But corroboration is not a requirement for the acceptance of such evidence. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1544.)

Here, Herbert essentially argues that the trial court abused its discretion in awarding the P. Family restitution in the amount it requested because Herbert "largely refuted the victims' claims by presenting compelling evidence that the [P. Family's] unsubstantiated claims were far, far higher than the advertised charges of the very vendors they claimed to have used." In this sense, Herbert is arguing that the evidence he presented was more persuasive than that offered by Michelle. Put differently, Herbert is merely asking this court to reweigh the evidence and determine that his evidence conclusively establishes the amount of restitution owed to the P. Family.

This is not our role in reviewing an order awarding victim restitution. (See *People v. Millard*, *supra*, 175 Cal.App.4th at p. 26; *People v. Thomas*, *supra*, 15 Cal.App.5th at p. 1071.)

Michelle testified under oath regarding her family's out of pocket expenses and lost income attributable to Herbert's crimes. Herbert's counsel cross-examined Michelle. There is no indication in the record that Michelle testified as to facts or subjects outside her personal knowledge. And Herbert also was given the opportunity to present evidence to challenge Michelle's claims on the amount of victim restitution owed. The court, hearing the testimony and considering the evidence offered, found the victim restitution amount requested reasonable. There is nothing in the record that leads us to believe the superior court's determination was irrational or without a factual basis. (See *People v. Riddles*, *supra*, 9 Cal.App.5th at p. 1252.)

In short, the record before us establishes a rational basis for the restitution order, which is supported by substantial evidence. The court did not err.

DISPOSITION

The order is affirmed.


HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


HALLER, J.